NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILSON E. TUCKER,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1567

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-2924, Judge Grant Jaquith.

---

Decided:  October 17, 2023

---

WILLIAM C. HERREN, Herren Law Office, Houston, TX, for claimant-appellant.

BRENDAN DAVID JORDAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM; AMANDA BLACKMON, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————————

Before STOLL, CUNNINGHAM, and STARK, *Circuit Judges*.

PER CURIAM.

Wilson E. Tucker appeals from the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the decision of the Board of Veterans' Appeals ("Board") denying Mr. Tucker's claim for Clear and Unmistakable Error ("CUE") relating to a February 1979 regional office ("RO") decision denying service connection for schizophrenia. *Tucker v. McDonough*, No. 20-2924, 2021 WL 6143675 (Vet. App. Dec. 30, 2021). For the reasons provided below, we affirm in part and dismiss in part.

I

Mr. Tucker served on active duty in the U.S. Marine Corps from September 1974 to September 1977. On October 23, 1978, he was admitted to the Jackson VA Hospital in Mississippi. Over the preceding nine days, he had been arrested for possession of marijuana, then hospitalized in Meridian, Mississippi, and discharged from that hospital with guidance that he obtain a psychiatric evaluation. Mr. Tucker's chief complaints on admission to the Jackson VA Hospital were "withdrawn behavior, [acting] short tempered, hearing things for the past one to two months, and agitation." App'x 12. He was diagnosed with schizophrenia, paranoid type.

On October 27, 1978, Mr. Tucker left the Jackson VA Hospital without approval. Then, on November 2, 1978, he was admitted to East Mississippi State Hospital pursuant to a court order. The admission notes from East Mississippi State Hospital stated that Mr. Tucker had been "drinking, smoking marijuana and taking 'angel dust.'" App'x 14. He was again diagnosed with schizophrenia, paranoid type. On November 7, 1978, Mr. Tucker underwent

a psychological evaluation at East Mississippi State Hospital.  The examination notes show that Mr. Tucker "acknowledged the intake of marijuana and alcohol, apparently on a regular basis, but denied the use of other drugs for the previous four years." App'x 17.  A social work report dated November 11, 1978 from East Mississippi State Hospital indicates that Mr. Tucker's mother said that "when smoking marijuana in conjunction with alcohol [Mr. Tucker] seemed to have become more belligerent toward those around him" and "would also go and talk to himself." App'x 20.  The social work report's assessment was that Mr. Tucker needed to "change [his] socially unacceptable behaviors and learn to control his abuse of alcohol and drugs." App'x 21.

On November 9, 1978, Mr. Tucker filed a claim for service connection for schizophrenia.  On February 5, 1979, the RO issued a rating decision denying his claim.  The rating decision, in relevant part, stated:

> As to schizophrenia, there is no evidence of complaint, treatment or diagnosis in service or within one year after discharge.  The preponderance of evidence indicates that [Mr. Tucker] was hospitalized for the first time on 10-23-78 with history of involvement in drugs and marijuana.  Since there is no evidence to show that [Mr. Tucker's] psychiatric problems go back to an earlier date than that which is identified with drug abuse, it cannot be shown that the etiology is related to service or comes within the presumptive period after service for compensation purposes.

App'x 22.  Mr. Tucker did not appeal the RO's decision, which became final.

On September 22, 2014, Mr. Tucker filed a CUE claim to reverse or revise the RO's 1979 rating decision.  He argued that his October 1978 schizophrenia diagnosis

established that he did, in fact, exhibit schizophrenia symptoms during the one-year presumptive period, which ended in September 1978, because a schizophrenia diagnosis requires "a finding of duration of symptoms of six months or more." App'x 27. Mr. Tucker also argued that the RO erred by focusing on the first dated medical diagnosis and failing to consider the "entire suite of evidence," including lay evidence in the record. In a decision issued on April 19, 2017, the RO found no CUE in the 1979 rating decision, explaining that since there was "no evidence to show that [Mr. Tucker's] psychiatric problems go back to an earlier effective date [than] that which is identified with drug abuse it cannot be shown that the etiology is related to service or comes within the presumptive period after service for compensation purposes." App'x 33. Mr. Tucker appealed that decision to the Board.

On December 31, 2019, the Board issued a decision finding that the RO's 1979 rating decision did not contain CUE. The Board explained:

> There is no indication that the regional office erred in the application of the law or the facts in rendering the February 1979 rating decision. The applicable law . . . clearly indicates that service connection based on the one-year presumptive period cannot be established for a chronic disease where the disease is a result of drug ingestion. In this case, the regional office found that [Mr. Tucker's] schizophrenia was precipitated by drug use and that there was no indication that the symptoms existed prior to the drug use, concluding that [Mr. Tucker] did not experience a chronic disease within one year of separation [from] service and foreclosing service connection on a presumptive basis.

App'x 48. Mr. Tucker then appealed the Board's decision to the Veterans Court.

The Veterans Court affirmed the Board's decision, finding that Mr. Tucker's reliance on medical treatises to establish the six-month incubation period for schizophrenia was misplaced because the editions of the treatises he cited to did not exist at the time of the RO's 1979 rating decision. The Veterans Court also found that the RO's consideration of the evidence was consistent with the regulations then in effect and that Mr. Tucker failed to show that the RO's rating decision would have been manifestly different had the RO explicitly addressed his drug use in relation to the rebuttal standard under 38 C.F.R. § 3.307. Mr. Tucker timely appealed to us.

## II

We have limited jurisdiction to review judgments of the Veterans Court. We may review the validity of a decision "on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied upon by" the Veterans Court. 38 U.S.C. § 7292(a). However, "[e]xcept to the extent that an appeal . . . presents a constitutional issue," we may not review "a challenge to a factual determination" or "to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2). We review statutory and regulatory interpretations relied upon by the Veterans Court de novo. *See Mayfield v. Nicholson*, 499 F.3d 1317, 1321 (Fed. Cir. 2007). And we will "hold unlawful and set aside any regulation or any interpretation thereof" that we find to be: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." 38 U.S.C. § 7292(d)(1).

## III

Mr. Tucker first contends that the Veterans Court and the Board incorrectly applied 38 C.F.R. § 3.307(b) by not requiring a determination of whether he had been diagnosed with an acute condition in 1978. The government responds that we lack jurisdiction because the Veterans Court did not interpret the regulation. Alternatively, even if we find jurisdiction, the government argues we should affirm because no finding of whether Mr. Tucker had an acute diagnosis was necessary.

We may "determine whether the legal requirement of the statute or regulation has been correctly interpreted in a particular context where the relevant facts are not in dispute." *Szemraj v. Principi*, 357 F.3d 1370, 1375 (Fed. Cir. 2004); *see also Bailey v. Principi*, 351 F.3d 1381, 1384 (Fed. Cir. 2003) (exercising jurisdiction "when the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome" of issue). Here, there is no dispute over the relevant facts: the RO did not make a finding of acute diagnosis in its rating decision, and no one contends that it did. Mr. Tucker's appeal on this issue, then, turns entirely on whether Section 3.307(b) should be interpreted as requiring such a finding. Thus, we have jurisdiction to address the interpretation of Section 3.307(b).

At the pertinent time, Section 3.307(b) stated, in relevant part:

> The diseases listed in § 3.309(a) will be accepted as chronic, even though diagnosed as acute because of insidious inception and chronic development, except: (1) where they result from intercurrent causes . . . ; or (2) where a disease is the result of drug ingestion or a complication of some other condition not related to service.

38 C.F.R. § 3.307(b) (1970). The plain meaning of the regulation is clear and permissive: diseases listed[1] in Section 3.309(a), "even though diagnosed as acute," may still be accepted as chronic, under the conditions set out in Section 3.307(b). Section 3.307(b) contains two exceptions, i.e., situations in which diseases listed in Section 3.309(a) may not be accepted as chronic: (1) where the disease results from intercurrent causes; and (2) where the disease "is the result of drug ingestion or a complication of some other condition not related to service." Thus, the RO did not require an acute diagnosis in order to deny Mr. Tucker's claim; it was permitted to deny that claim based on his disease, schizophrenia, being "the result of drug ingestion," regardless of whether his schizophrenia was acute or chronic.

Mr. Tucker next argues that the Veterans Court and the Board erred by failing to decide whether the RO exercised "medical judgment" in reaching the conclusion that his schizophrenia was connected to his drug use. Mr. Tucker's contention hinges on whether the evidence the RO relied on in making its rating decision was sufficiently medically independent to rebut the presumption that Mr. Tucker's schizophrenia was service connected. Addressing this issue would require us to weigh the evidence, a task outside of our jurisdiction. *See Andino v. Nicholson*, 498 F.3d 1370, 1373 (Fed. Cir. 2007) (finding that "making credibility determinations or weighing evidence . . . is beyond our jurisdiction"). Thus, we dismiss this part of appeal for lack of jurisdiction.

## IV

We have considered Mr. Tucker's remaining arguments and find that they lack merit. Accordingly, for the

---

[1] Psychosis was listed among the chronic diseases subject to presumptive entitlement in the operative version of Section 3.309(a). *See* 38 C.F.R. § 3.309(a) (1976).

reasons given above, we affirm the Veterans Court's interpretation of 38 C.F.R. § 3.307(b) and dismiss the challenge to the fact-based determination that Mr. Tucker's schizophrenia was connected to his drug use.

## AFFIRMED-IN-PART AND DISMISSED-IN-PART

### COSTS

No costs.